# United States District Court
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIM. ACTION NO. 3:18-CR-0510-S |
| | § | |
| JULIO CESAR VALADEZ (3) | § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses the Government's Motion for Review and Revocation of Pretrial Release Order [ECF No. 81] ("Motion"). For the following reasons, the Court **GRANTS** the Motion.

### I.  BACKGROUND

Defendant Julio Valadez (the "Defendant") is a 33-year-old lawful permanent resident who has resided in the United States for 28 years. *See* Detention Hr'g Tr. 17:9-13. The Defendant was indicted on September 25, 2019, for two drug related offenses: Conspiracy to Possess with Intent to Distribute a Controlled Substance and Possession of a Controlled Substance with Intent to Distribute. *See* Sealed Superseding Indictment [ECF No. 51] 1-2.

A detention hearing was held before United States Magistrate Judge David Horan (the "Magistrate Judge") on June 8, 2020. *See* Detention Hr'g Tr. 1. The Magistrate Judge found that "there are conditions that [he] could set that would reasonably assure [Defendant's] appearance as required and the safety of the community[.]". *Id.* 58:4-6. After the Magistrate Judge rendered his decision, the Government objected on the record and the Magistrate Judge stayed the release pending the Government's appeal. *Id.* 60:17-21, 61:2-8. The Government then filed its Motion, which is now ripe before the Court.

## II. LEGAL STANDARDS

This Motion is governed by the Bail Reform Act of 1984 ("Act"). *See* 18 U.S.C. §§ 3141 *et seq*. "When the district court acts on a motion to revoke or amend a magistrate's pretrial detention order, the district court acts de novo and must make an independent determination of the proper pretrial detention or conditions for release." *United States v. Rueben*, 974 F.2d 580, 585-86 (5th Cir. 1992) (citation omitted).

"For pretrial detention to be imposed on a defendant, the lack of reasonable assurance of either the defendant's appearance, or the safety of others or the community, is sufficient; both are not required." *Id.* at 586 (citing *United States v. Hare*, 873 F.2d 796, 799 (5th Cir. 1989)). To determine whether pretrial detention is necessary, the Court considers the following factors:

(1) The nature and circumstances of the offense charged;
(2) The weight of the evidence against the person;
(3) The history and characteristics of the person; and
(4) The nature and seriousness of the danger to any person or the community that would be posed by the person's release.

§ 3142(g). The Government bears the burden of persuasion in demonstrating that, under these four factors, "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." *United States v. Fortna*, 769 F.2d 243, 251 (1985) (citing *United States v. Jessup*, 757 F.2d 378, 380-84 (1st Cir. 1985)); § 3142(e). The Government's showing must be either "clear and convincing evidence" on the question of community safety or "preponderance of the evidence" for "risk of flight." *Fortna*, 769 F.2d at 250.

## III. ANALYSIS

### A. *The Nature and Circumstances of the Offense Charged*

The first factor of the Act requires the Court to determine "the nature and circumstances of the offense charged, including whether the offense is a crime of violence, in violation of section

2

1591, a Federal crime of terrorism, or involves a minor victim or a *controlled substance*, firearm, explosive, or destructive device . . ." 18 U.S.C. § 3142(g)(1) (emphasis added).

The Defendant is charged with conspiracy to possess with intent to distribute a controlled substance and possession of a controlled substance with intent to distribute. *See* Sealed Superseding Indictment [ECF No. 51] 1-2. Specifically, the Defendant has been accused of facilitating two drug transactions by securing vehicles to transport the drugs. *See* Detention Hr'g Tr. 7:17-22; 8:16-25. The Government's witness, Dallas Police Department Officer and Drug Enforcement Agency Task Force Officer Christopher Hight ("Officer Hight"), testified that the Government's evidence implicated the Defendant in two overt acts in furtherance of the underlying drug conspiracy: a 200-pound marijuana deal and a foiled 700-pound marijuana transaction that ultimately ended in seizure. *See id.* 7:2-4; 12:2-8; 19:21-20:1; 25:4-9. The Defendant's participation allegedly aided Mexican drug traffickers. *See id.* The Defendant also allegedly sent a Mexican drug leader money transfers 28 times.[1] *See id.* 25:4-8. The Court finds that the nature and circumstances of the offense charged include drug trafficking in furtherance of a Mexican drug conspiracy's importation of large amounts of marijuana. Therefore, the first factor weighs in favor of detention. *See, e.g., Fortna*, 769 F.2d at 253 (upholding detention where there was a "showing that massive amounts" of drugs and foreign criminal contacts were involved); *United States v. Remo*, 782 F. Supp. 53, 56 (E.D. Tex. 1991) (upholding detention order where the defendant was charged with drug trafficking, reasoning that the nature of the offense went to both the risk of flight and danger to the community).

---

[1] These money transfers were the focus of Officer Hight's testimony. Officer Hight examined the records of the wire transfers and noted that they included phone numbers attributable to Defendant. Detention Hr'g Tr. 12:2-25.

3

### B. *The Weight of the Evidence Against the Person*

The second factor requires the Court to evaluate "the weight of the evidence against the person." 18 U.S.C. § 3142(g)(2). Officer Hight testified that the evidence against the Defendant in this case includes wiretaps and the records of wire transfers to co-defendants in Mexico. *See* Detention Hr'g Tr. 25:4-8; 6:1-7:1. The investigation started when a source in Mexico provided law enforcement officers with a number for a marijuana source of supply. *See id.* 6:1-10. That source, who is a leader in the drug conspiracy, according to Officer Hight, *see id.* 19:11-13, was Jamie Valadez, Defendant's brother. *See id.* 6:11-12. Law enforcement officers then tapped Jamie Valadez's phone, which led them to Defendant. *See id.* 6:15-17. On the wiretap, officers learned that Defendant helped secure vehicles for a 700-pound marijuana deal. *See id.* 7:2-24. Using the same wiretap, Officers set up surveillance and stopped the vehicles, which had marijuana inside of them. *See id.* 7:17-25. As Defendant's co-conspirator was attempting to flee police officers, Jamie Valadez called the Defendant "telling him to get all the work out of the house, to put it in another vehicle, get it out of there." *Id.* 7:23-8:5. Using the wire, officers also heard Jamie arrange for Defendant to provide vehicles for a separate 200-pound marijuana deal. *See id.* 8:15-24. Based on these facts, the Court finds that there is strong evidence weighing against Defendant and that the second factor weighs in favor of detention. *See Fortna*, 769 F.2d at 252 (upholding detention where an FBI agent's affidavit detailed "concrete plans" for "carrying out" narcotics importation).

### C. *The History and Characteristics of the Person*

The third factor requires the Court to evaluate,

(3) the history and characteristics of the person, including—

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

4

> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law;
>
> . . .

18 U.S.C. § 3142(g)(3)(A)-(B). At the detention hearing, the Defendant's sister, Iris Valadez, attested to the Defendant's community ties, family ties, character, length of residence in the community, and record of appearing for court proceedings. Specifically, she testified that the Defendant had never been to Mexico.[2] *See* Detention Hr'g Tr. 29:19-23. She testified that Defendant has "strong" ties to the North Texas area where he has resided since he was five years old. *See id.* 33:25-34:6. Iris Valadez testified that Defendant is a good father to his children. *See id.* 31:11-15. She also confirmed that her parents are in poor health and that Defendant oversees their care. *See id.* 32:24-33:5.[3] The Court finds that Defendant's community ties, family ties, and length of stay in the community favor release based on Iris Valadez's testimony that Defendant has significant family ties and Officer Hight's testimony that Defendant has resided in Texas from age five until present. *See id.* 17:3-13.

Nonetheless, the evidence relating to past conduct and criminal history weigh in favor of detention. According to the uncontested testimony of Officer Hight, Defendant has had two misdemeanors. *See id.* at 13:9-10. The 2017 misdemeanor involved a charge of unlawfully carrying a weapon in Denton County. *See id.* 13:11-12. In response to the charge, the Defendant was under consideration for pretrial diversion starting on June 19, 2018 and entered the program on September 18, 2018.[4] *See* Pretrial Services Report 3. Because this offense led to the

---

[2] The Pretrial Services Report makes clear that Defendant was born in Mexico. *See* Pretrial Services Report 1. In context, Iris Valadez appears to have meant that the Defendant has not *returned* to Mexico since his family emigrated.

[3] This testimony was confirmed by Officer Hight's testimony. *See* Detention Hr'g Tr. 21: 15-18.

[4] This misdemeanor charge was ultimately dismissed by motion on July 29, 2019. *See* Pretrial Services Report 3.

5

Defendant's enrollment in a pretrial diversion program, the Magistrate Judge noted the overlap between the alleged illegal conduct and that program on the record:

> Here, generally speaking, the evidence shows that *Mr. Valadez was engaged in a large-scale marijuana trafficking conspiracy with his older brother* until his brother left for Mexico, and . . . at least for some period of time, *while on pretrial diversion for state charges*, including two state charges, misdemeanor charges, including for assault on his girlfriend and mother of his child. The evidence also suggests that Mr. Valadez has continued to have contact with his brother and co-Defendant and has sent him multiple wire transfers to Mexico.

Detention Hr'g Tr. 57:4-10 (emphasis added). Although the Defendant did not forfeit bail for either offense, *see id.* 14:11-23, the Court finds that the previously discussed evidence that he was under consideration for and later enrolled in pretrial diversion while furthering a drug conspiracy weighs in favor of detention. *Cf. Rueben*, 974 F.2d at 587 (reversing district judge's grant of release where the defendant was involved in drug trafficking "while being on parole or shortly after being released from parole"); *Remo*, 782 F. Supp. at 56 (upholding detention where the defendant committed an offense while on probation or parole).

The Court also finds that Defendant has a history of violence that weighs in favor of detention. His other misdemeanor charge stemmed from an incident where the Defendant allegedly beat the mother of one of his children "in the face with a closed fist." Detention Hr'g Tr. 24:7.[5] According to the uncontested testimony of Officer Hight, the victim was transported to Baylor Hospital in Carrolton, Texas after the incident. *See id.* 24:9-10. The victim tried to submit an affidavit of non-prosecution, but—because the injuries were so severe—the police referred the case to the Dallas District Attorney's Office. *See id.* 24:15-25:1. This portion of Defendant's criminal history demonstrates that he is a potential threat to the public if released. Considering the

---

[5] *See also* Pretrial Services Report 3-4 (describing the charge). This misdemeanor is still pending. *See id.*

Defendant's past conduct and criminal history, the Court finds that Defendant's characteristics and history favor pretrial detention.

**D.** *The Nature and Seriousness of the Danger to Any Person or the Community*

The fourth statutory factor requires the judicial officer to examine, "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). "The risk of continued narcotics trafficking on bail constitutes a risk to the community." *Hare*, 873 F.2d at 798. Here, there is strong evidence that Defendant furthered a drug trafficking conspiracy while he was under consideration for and after he was enrolled in a pretrial diversion program. *See* Pretrial Services Report 3; Detention Hr'g Tr.57:4-10.[6] The Court finds that this evidence demonstrates a substantial risk of danger to the community through continued drug trafficking. Accordingly, the fourth factor weighs in favor of pretrial detention.

## IV. CONCLUSION

After weighing the factors, the Court finds that there are "no conditions of release" that "would reasonably assure the appearance of the [defendant] . . . and the safety of the community." *Hare*, 873 F.2d at 798. Therefore, the Court **GRANTS** the Government's Motion.

**SO ORDERED.**

SIGNED July 30, 2020.

**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**

---

[6] The Court finds that there is also, considering the pending misdemeanor charge for assault, a significant threat to public safety posed by any repeated instances of violence. *See* Detention Hr'g Tr. 24:7.